IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **PETER BIRD,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-2824** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Peter Bird ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.   Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendant's Motion for Summary Judgment (ECF No. 20).[1]   Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he was not disabled before his 55th birthday.   No hearing is necessary.   L.R. 105.6.   For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).   For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1958, has a high-school education, and previously worked as a security screener and security-system operator.  R. at 28, 42, 44.  Plaintiff applied for DIB protectively on April 27, 2010, and for SSI on May 6, 2010, alleging disability beginning on April 1, 2010, due to a stroke.  R. at 29-30, 232-42, 264.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 101-04, 127-41.  On November 17, 2011, ALJ C.J. Sturek held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 71-100.  On December 1, 2011, the ALJ issued an unfavorable decision.  R. at 105-21.  On October 2, 2012, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings.  R. at 122-25.

On April 29, 2013, the ALJ held a supplemental hearing at which Plaintiff and another VE testified.  R. at 37-70.  On May 6, 2013, the ALJ issued a partially favorable decision finding Plaintiff was not disabled before his 55th birthday, but became disabled on that date through the date of the decision.  R. at 13-36.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on July 23, 2013.  R. at 1-5.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On September 25, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was

reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Opinion Evidence

On August 5, 2010, Sisom Osia, M.D., conducted a consultative examination of Plaintiff. R. at 364-70.  The doctor's musculoskeletal examination revealed that Plaintiff had full muscle strength, normal cervical range of motion, and normal range of motion in both elbows.  R. at 368.  Lumbar range of motion demonstrated "90 degrees flexion without pain."  R. at 368. Plaintiff reported the following limitations to Dr. Osia:

> After sitting more than 30 minutes [Plaintiff's] back hurts and with resultant shift of position.
> After standing 2 minutes [Plaintiff] has leg pain.
> After walking a few minutes [Plaintiff] reports pain in the legs, stop, bend over [sic].
> After walking less than 1 block[] [Plaintiff] reports leg pain.
> [Plaintiff] is able to lift 15-30 pounds of weight.
> [Plaintiff] is unable to carry weight of 15 pounds.
> He has good hand grip.
> [Plaintiff] complains he can . . . sit down for a while without problem.
> [Plaintiff] has normal speech.
> He has normal hearing.

R. at 368.

Dr. Osia's remarks included the following:

> [Plaintiff's] work related activities [have] been stated in his own words.  He said he had fluid in the left knee and this was drained earlier this year.  He said he was working as a [security] officer before his stroke and that his equilibrium has been off since then.  He said that his stroke was in April of 2010 and that he was discharged from Washington Hospital Center without physical therapy.  He could not squat because of low back pain and left knee pain.  He ambulates with a cane but I doubt if he needs it.  His physical [examination] and lack of record [do] not support his [claim].  I will suggest a review of medical records and or neurology referral.  There is no sensory or motor deficits noted during this evaluation.

R. at 368-69.

On October 5, 2010, Jerry Mann, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 373-80.  Dr. Mann opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 374.  Plaintiff occasionally could kneel and crawl and frequently could climb, balance, stoop, and crouch.  R. at 375.  He had no manipulative, visual, communicative, or environmental limitations, however.  R. at 376-77.  Dr. Mann found no medical evidence in the record to support Plaintiff's allegation of a stroke and that his activities of daily living were not wholly consistent with the objective physical evidence.  R. at 380.

On October 22, 2010, Plaintiff underwent an MRI of his lumbar spine (R. at 466-69), which revealed the following:

1. There is mild discogenic disease, spondylosis, and diffuse posterior bulges at T10-11, T11-12, and from L3-4-L5-S1.

2. At T11-12 is a probable right-sided [herniated nucleus pulposus ("HNP")] and there is a probable extruded HNP at T10-11.  If clinically indicated further evaluation with a dedicated MRI examination of the thoracic spine could be performed.

3. There is a grade 1 spondylolisthesis at L4-5 and a moderate degree of central canal spinal stenosis and a severe degree of neural foraminal stenosis bilaterally left greater than right.

4. At L5-S1 there is a central/right paracentral HNP and a moderate degree of facet joint osteoarthropathy bilaterally.

5. At L3-4 there is a moderate degree of facet joint osteoarthropathy bilaterally.

> 6.   There is a probable transitional lumbosacral segment in this patient.  For purposes of interpreting this examinations [sic] the last hydrated disc space will be considered S1-S2.  If surgery is to be contemplated in this patient careful correlation of radiographs with this MRI examination to determine exact levels is recommended.

R. at 469.

On November 1, 2010, Plaintiff visited J. Alex Thomas, M.D., for a neurosurgical follow-up visit.  R. at 494-96.  Dr. Thomas noted the following:

> Today he says the pain is stable.  He says the pain severely limits the distance that he can walk.  He also complains of an associated axial back pain.  He says, however, that 80% of the pain he has is in his legs and only 20% of his back.  He says that his pain is now severely limiting his daily life.
>
> On examination [Plaintiff] moves bilateral lower extremities with full strength.  He walks with a cane.  I reviewed the MRI of the lumbar spine dated October 22, 2010. . . . I believe that [Plaintiff] is exhibiting classic symptoms of lumbar stenosis.  The symptoms that he describes are those of neurogenic claudication.  I believe that he would significantly benefit from decompression at the L4-5 level. . . . .
>
> [Plaintiff] says that he would like to proceed with surgery because he can no longer live with the pain.  Unfortunately, he is still trying to arrange for work disability to be able to pay for the surgery.  I told him that surgery for this condition is not mandatory and ultimately comes down to whether or not the patient can live with the pain.  Thus, I do not think it is unsafe for him to wait to arrange his work disability.

R. at 495-96.

On December 27, 2010, an X-ray of Plaintiff's lumbar spine revealed mild degenerative change and no acute abnormalities.  R. at 390.

On December 29, 2010, another state agency medical consultant, S.K. Najar, M.D., also assessed Plaintiff's physical RFC.  R. at 391-98.  Dr. Najar opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the left leg.  R. at 392.  Plaintiff

occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 393.  He had no manipulative, visual, communicative, or environmental limitations.  R. at 394-95.

On January 19, 2011, Vaul Phillips, M.D., conducted a consultative musculoskeletal examination of Plaintiff.  R. at 399-406.  Dr. Phillips's diagnosis included the following:

> [Plaintiff] was able to sit for approximately 40 minutes during the interview process without extreme difficulty.  He has good balance and mobility, and fairly normal gait and station on exam other than some complaint of the hand numbness, which appears to be bilateral.  Grip strength is 5/5 with no limitations in the use of the hands, arms and fingers.  [Plaintiff] primarily complains of low back pain, exhibiting approximately 10 to 15% decrease in range of motion and expresses most of his limitations and disability related to that.  In my opinion, [Plaintiff] can sit for 6 hours per 8 hour day with a 5 minute break every hour to stand and stretch.  He can stand for 20 minutes at a time for a total of 5 hours per 8 hour day, and walk for 15 minutes at a time for a total of 4 hours per 8 hour day.  He can exert 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects[.]

R. at 402.

On January 25, 2011, Dr. Najar affirmed his RFC assessment after reviewing Dr. Phillips's report.  R. at 27, 407.

## B.      Hearing Testimony

### 1.       Plaintiff's Testimony

In his decision, the ALJ reviewed Plaintiff's testimony as follows:

> From April 1, 2010, through March 26, 2013, [Plaintiff] was a 52- to 54-year-old man with a high school education and one year of college alleging symptoms and limitations arising from the residual effects of a stroke, [degenerative joint disease] of his left knee, and lumbar disc disease.  He testified at the hearing that his most significant difficulties, including on standing, walking, and sitting, arise from symptoms in his legs related to a lower back problem, and have prevented him from sustaining work on a full-time basis since April 1, 2010.

> [Plaintiff] further testified at the hearing that he last worked as a screener in March 2010, which was a job that allowed him the option to alternate between

sitting and standing, but stopped working when he was laid off. He also noted that he was experiencing back problems, and suffered a stroke at the time. He indicated that he subsequently received unemployment benefits, which required him to verify that he was actively looking for work; however, he testified that he was not really doing so. He reported that he is currently subsisting on food stamps, financial support from friends and family members, and State health insurance.

In terms of his impairments, [Plaintiff] noted symptoms related to his back disorder, including lower back pain once per day for a couple of minutes at a time. However, he indicated that his worst problems related to numbness and pain in his legs, especially after walking or standing for prolonged periods. He stated that surgery had been recommended, but that he has not been able to afford surgical intervention, due to lack of funds and insufficient health coverage. He noted difficulty flexing his left knee, which had been drained on two occasions, but said that he does not have much problem with the knee, and occasionally stretches it. He denied taking any sleep or pain medications, except for occasional over-the-counter Tylenol. He also testified that he is 5'11" and has weighed around 299 pounds for about the past seven years.

With regard to his functional capabilities, [Plaintiff] testified that he could lift or carry about 20 pounds regularly, and could lift more if necessary, but with pain. He indicated that he could walk up to one block before having to stop, stand five minutes before having to sit, and sit 10-15 minutes before experiencing numbness in his legs. He stated that he has used a cane since about June 2010, to assist with walking and to rest on it, but denied that it was prescribed. He indicated that he had problems climbing stairs, such that he has to hold onto railings when doing so, experiences balance problems after standing about 10-20 minutes, and wakes up often at night to shift positions, secondary to pain. He denied problems bending his knees, bending to touch his toes, pushing or pulling with the upper or lower extremities, raising his arms overhead, and using his hands or fingers.

As for his activities of daily living, [Plaintiff] testified that he lives in a house by himself, drives an automobile about twice per week, cooks, cleans, goes to the laundromat and grocery store, walks for exercise, watches television, and reads occasionally. He noted slight problems bending and tying his shoes while dressing, but denied any problems bathing. He reported that he drives to mail letters, go to the grocery store, and visit his sister, mother and niece. He indicated that he uses a cart for grocery shopping, but said that he carries groceries from the cart, up the steps, and into his house. He mentioned that his sister helps him with cooking bigger meals and doing his laundry on occasion. He further noted that he sleeps up to seven hours per night, with frequent awakenings due to pain and the need to use the restroom, and indicated that he takes 15-minute naps almost every day, at different times throughout the day.

R. at 22-23; *see* R. at 42-64.

      **2.**      **VE Testimony**

The VE classified Plaintiff's past work as a security screener and security-system operator as semi-skilled and light.[2]  R. at 28, 49.  According to the VE, light, unskilled jobs in the national economy available to a hypothetical person with Plaintiff's same age, education, work experience, and the RFC as described in Part III below include machine tender and packer and packaging worker.  R. at 64-67.  The VE opined that an individual's reduction in production at work by 20% or greater would render that individual non-employable.  R. at 66.

**III**

**<u>Summary of ALJ's Decision</u>**

On May 6, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of April 1, 2010; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy before his 55th birthday, such as a machine tender or packer/packaging worker.  R. at 19-29.  The ALJ accordingly found that he was not disabled before his 55th birthday but that he became disabled on that date through the date of the decision.  R. at 29.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

In so finding, the ALJ found that Plaintiff had the RFC

> to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), and sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), lifting 10 pounds frequently and 20 pounds occasionally.  [Plaintiff] can walk/stand at least two hours in an eight-hour work day.  He can never climb ladders, ropes or scaffolds, or crawl, and can only occasionally climb stairs or ramps, balance, bend, stoop, kneel, crouch, and squat.  He must avoid concentrated exposure to extreme heat, fumes, odors, dust, gases, poor ventilation, etc., and hazards such as moving machinery and unprotected heights.  Due to pain, fatigue, and the side effects of medication, [Plaintiff] is limited in the ability to concentrate, maintain attention for extended periods, and keep up a pace, but would still be able to remain productive more than 80% of the time.

R. at 21.

The ALJ found that Plaintiff's severe impairments included obesity, residuals of a stroke, degenerative joint disease of the left knee, and lumbar disc disease.  R. at 20.  Specifically considering §§ 1.02, 1.04, and 11.04, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 20-21.  The ALJ further found that Plaintiff's obesity did not result in sufficient symptoms or functional impairment to meet or medically equal a listed impairment.  R. at 21.

Regarding Plaintiff's credibility, the ALJ found that Plaintiff's activities of daily living were not entirely consistent with his allegations of total disability and that the medical evidence of record did not corroborate his allegations of totally disabling physical symptoms and limitations.  R. at 23.  The ALJ thus found that his "medically[]determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible."  R. at 23.  The ALJ found that,

> [w]hile the undersigned does not hold [Plaintiff's] inability to afford surgical intervention against him, the fact that he has lived with the pain without taking any prescription pain medications, and has conducted a fairly significant range of

independent activities of daily living for over two and one-half years since surgery was recommended, is remarkable.

R. at 26. The ALJ also weighed the opinion evidence in the record, giving some weight, but not great weight, to the opinions of the state agency consultants and the consultative examiners "because these examining and non-examining physicians did not have the benefit of a complete record." R. at 27.

**IV**

**<u>Disability Determinations and Burden of Proof</u>**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production

and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[4] 96-8p.  Pl.'s Mem. Supp. Summ. J. 3-8, ECF No. 18-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work.  *Id.* at 6.  In particular, he asserts that the ALJ erroneously relied on the opinions of the state agency consultants and the consultative examiners because they were unaware of the severity of his back condition as evidenced by an MRI examination in October 2010.  *Id.* at 7.  He maintains that "[t]his lack of knowledge of the extent of [his] back condition is significant" because if he were limited to sedentary work, then he would be disabled before his 55th birthday, according to 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14, pertaining to individuals closely approaching advanced age (50 to 54 years old), as defined in 20 C.F.R. §§ 404.1563(d) and 416.963(d).  *Id.*

Plaintiff's argument is without merit.  A "non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by *all of the other evidence* in the record."  *Smith*, 795 F.2d at 345.  However, "the testimony of a non-examining physician can be relied upon when it is consistent with the record."  *Id.* at 346.

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

Here, the ALJ afforded the opinions of the examining and non-examining physicians "some" weight, but not "great" weight, because these physicians "did not have the benefit of a complete record." R. at 27. Rather, the ALJ noted the findings of Plaintiff's October 2010 MRI, but further noted that this MRI's findings conflicted with the December 2010 X-ray of Defendant's lumbar spine that showed only mild degenerative change and no acute abnormalities. R. at 25, 390, 469. As noted in Part V above, the duty to resolve conflicts in the evidence rests with the ALJ, not with the Court. *Johnson*, 434 F.3d at 653; *Smith*, 99 F.3d at 638; *see Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("[I]t is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion." (footnote omitted)). In this case, "while the state agency consultants [and consultative examiners] did not have the benefit of a full record, the ALJ did," *Tanner v. Comm'r of Soc. Sec.*, No. 14-1272, 2015 WL 574222, at *5 (4th Cir. Feb. 12, 2015) (per curiam), and found that "[t]he medical evidence and other evidence of record suggest that [Plaintiff] can sustain a greater capacity than he described at the hearing." R. at 27. The ALJ noted that Dr. Osia, a consultative examiner, opined in August 2010 that physical examination of Plaintiff and the record did not support his claim and that he did not need a cane despite using one. R. at 24-25, 369. Dr. Thomas, who did review the October 2010 MRI, noted on examination in November 2010 that Plaintiff demonstrated full bilateral strength in his lower extremities. R. at 25, 495. The ALJ also found that Plaintiff's functional limitations as opined by another consultative examiner, Dr. Phillips, who noted Plaintiff's complaints of low back pain and a decreased range of motion of 10 to 15%, did "not evince a person who is entirely incapable of working." R. at 25; *see* R. at 402.

Further, the ALJ reviewed Plaintiff's reported activities of daily living and his hearing testimony to find his "statements concerning the intensity, persistence, and limiting effects of [his] symptoms . . . not entirely credible" (R. at 23), which Plaintiff has not disputed and substantial evidence supports. *See Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam). Notably, the ALJ found that "the fact that he has lived with the pain without taking any prescription pain medications, and has conducted a fairly significant range of independent activities of daily living for over two and one-half years since surgery was recommended, is remarkable." R. at 26. The ALJ also noted that Plaintiff's receipt of unemployment benefits belied his allegations of total disability (R. at 24). *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) ("[W]e are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability."); *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (stating that "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability," but noting that ALJ cannot base adverse credibility finding on this fact alone); *Ingrodi v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-13-3283, 2015 WL 222174, at *2 (D. Md. Jan. 12, 2015). For these reasons, the lack of consideration of Plaintiff's October 2010 MRI by the state agency medical consultants and consultative examiners does not warrant remand.

Plaintiff further maintains that, given his vocational profile, he would be considered disabled before his 55th birthday under 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14, if he were limited to performing sedentary work. Pl.'s Mem. Supp. Summ. J. 7, ECF No. 18-1. At the April 2013 hearing, Defendant's counsel argued that limiting Plaintiff to sedentary work was

16

"mostly consistent" with Dr. Najar's opinion that Plaintiff was able to (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the left leg.  R. at 41, 392.  Such limitations, however, actually are consistent with light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "If someone can do light work, [the Commissioner determines] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  *Id.*  In fact, the VE testified that the exertional limitations opined by Dr. Najar would limit a person to a full range of sedentary work but not preclude him from performing less than a full range of light work.  R. at 64.  The VE further testified about the availability of light, unskilled jobs that would be available to such a person with additional non-exertional limitations (R. at 65-67).  *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989).

Moreover, despite Plaintiff's contention that the ALJ failed to explain his finding that Plaintiff was able to remain productive more than 80% of the time (Pl.'s Mem. Supp. Summ. J. 6, ECF No. 18-1 (citing R. at 21)), Plaintiff points to no evidence that he would have a 20% reduction in productivity as a result of his impairments, *see Jeffress v. Astrue*, No. 3:11-CV-806-HEH, 2012 WL 3866536, at *15 (E.D. Va. Aug. 21, 2012), *report and recommendation adopted*, No. 3:11CV806-HEH, 2012 WL 3851222 (E.D. Va. Sept. 5, 2012), and "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim."  *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).  "[I]f the decision 'is overwhelmingly supported by the record though the agency's

original opinion failed to marshal that support, then remanding is a waste of time.'" *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.)).

In short, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.

Date: March 10, 2015                                         _____/s/_____
                                                            Thomas M. DiGirolamo
                                                            United States Magistrate Judge